**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br>378 North Main Ave.<br>Tucson, AZ 85701,<br><br>HUMANE SOCIETY INTERNATIONAL,<br>1255 23rd Street NW, Suite 450,<br>Washington, D.C. 20037,<br><br>THE HUMANE SOCIETY OF THE UNITED<br>STATES,<br>1255 23rd Street NW, Suite 450,<br>Washington, D.C. 20037,<br><br>NATURAL RESOURCES DEFENSE COUNCIL,<br>40 West 20th Street 11th floor,<br>New York, NY 10011,<br><br>                Plaintiffs,<br><br>v.<br><br>RYAN ZINKE, Secretary of the Interior,<br>U.S. Department of the Interior<br>1849 C Street NW<br>Washington, DC 20240,<br><br>U.S. FISH AND WILDLIFE SERVICE,<br>1849 C Street NW<br>Washington, DC 20240,<br><br>                Defendants. | Civil No. |

**COMPLAINT FOR DECLARATORY**
**AND INJUNCTIVE RELIEF**

**Introduction**

1.     Plaintiffs Center for Biological Diversity ("Center"), Humane Society

International ("HSI"), Humane Society of the United States ("HSUS"), and Natural Resources

Defense Council ("NRDC") bring this action under the Endangered Species Act ("ESA"), 16

U.S.C. §§ 1531-1544, to challenge the failure of the Secretary of the Interior ("Secretary") and the U.S. Fish and Wildlife Service ("FWS") (collectively, "Defendants" or "the Service") to make a statutorily-required finding under the ESA. 16 U.S.C. § 1533(b)(3)(A). Specifically, Defendants have failed to undertake nondiscretionary action on Plaintiffs' petition to protect giraffes (*Giraffa camelopardalis*) under the ESA, 16 U.S.C. § 1533(b)(3)(A). Plaintiffs respectfully request that this Court order Defendants to comply by a date certain with the ESA's mandatory, non-discretionary 90-day finding deadline for processing citizen petitions to list species. 16 U.S.C. § 1533(b)(3)(A). Compliance with this mandatory deadline is necessary to help ensure the continued survival of giraffes, which have suffered devastating declines over the past 30 years.

2.     Giraffes are one of the most well recognized and iconic African wildlife species. The animals once occupied much of Africa's savannah and savannah woodlands, but today are found in only small, isolated fragments of their once expansive range. Giraffe's long necks, tongues and eye lashes, uniquely patterned coats, and distinctive gaits have long captured the human imagination. But giraffes are also important to their savannah ecosystem. Their height enables them to provide early warnings to nearby mammals about approaching predators and allows them to browse on tall and hard to reach vegetation. Additionally, their intensive grazing of acacia trees helps support ant colonies that protect acacia trees from wood-boring beetles and other insects likely to kill acacia trees – an important food source for many African species.

3.     Unfortunately, giraffes are declining and now face extinction. In 2016 the International Union for Conservation of Nature ("IUCN") classified the species as vulnerable to extinction, estimating that giraffes have undergone a 36 to 40 percent population decline over the past 30 years. In 2018, the IUCN reaffirmed giraffes' vulnerable status and reiterated that only

about 97,500 giraffes remain in Africa now compared to the over 150,000 giraffes estimated in Africa in 1985.

4.      Giraffes face myriad threats including habitat destruction and fragmentation; overutilization as a result of illegal hunting, trophy hunting, and the international commercial trade in giraffe parts (e.g., bone, skin, etc.); disease and predation; and the inadequacy of the current regulatory mechanisms. United States data on wildlife imports shows an increase in giraffe bone carvings and hunting trophies from 2011 to 2015 and an increase in giraffe skin pieces and shoes since 2014. The combination of these threats puts the species at risk of extinction.

5.      As a result of these ongoing threats to giraffes and the clear science documenting the giraffe's decline, on April 19, 2017, Plaintiffs petitioned the Service to protect giraffes pursuant to section 4 of the ESA. Currently, giraffes are protected internationally only under the Convention on Migratory Species (to which the United States is not a signatory). Defendants have not responded to Plaintiffs' petition.

6.      Defendants have not issued the "90-day finding" required under section 4(b)(3)(A) of the ESA. 16 U.S.C. § 1533(b)(3)(A). That finding was due in July of 2017.

7.      As a result, Plaintiffs seek declaratory and injunctive relief to enforce the mandatory deadline for Defendants to make a 90-day finding on the Petition to list giraffes under the ESA and to compel Defendants to determine whether the Petition presents "substantial scientific or commercial information indicating that the petitioned action may be warranted." 16 U.S.C. § 1533(b)(3)(A).

**JURISDICTION AND VENUE**

8.      This action arises under the ESA, 16 U.S.C. §§ 1531-1544, and the

Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551-559, 701-706, and relief is

appropriately awarded under the ESA, 16 U.S.C. § 1540(g); the APA, 5 U.S.C. §§ 701-706; the

Declaratory Judgments Act, 28 U.S.C. §§ 2201, 2202 (declaratory and injunctive relief); and the

Court's equitable powers.

9.      The Court has jurisdiction over this action pursuant to 16 U.S.C. §§ 1540(c),

(g)(1)(C) (action arising under ESA citizen suit provision), 5 U.S.C. § 702 (review of agency

action under the APA), and 28 U.S.C. § 1331 (federal question jurisdiction).

10.      As required by section 11(g) of the ESA, on September 18, 2018, Plaintiffs

provided Defendants with written notice of their intent to file this suit pursuant to the citizen suit

provision of the ESA. 16 U.S.C. § 1540(g)(2)(C).

11.      Defendant Secretary of Interior, Ryan Zinke, received a first class, certified mail

copy of Plaintiffs' notice letter on September 29, 2018.

12.      Defendant U.S. Fish and Wildlife Service received a first class, certified mail

copy of Plaintiffs' notice letter directed to then Acting Director Jim Kurth and Assistant Director

for Endangered Species Gary Frazer on September 24, 2018.

13.      Defendants have not remedied the violations alleged in Plaintiffs' notice letter.

14.      Defendants did respond that "[w]e have been unable to publish the 90-day finding

on your petition to list the giraffe due to competing workload and higher-priority actions.

However, we are applying our best efforts to submit a 90-day finding on the petition to the

*Federal Register*." Defendants have not even proposed a deadline for making the finding. An

actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201.

15.     Venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391(e) and 16 U.S.C. § 1540(g)(3)(A), as this civil action is brought against officers and employees of the United States acting in their official capacities and under the color of legal authority, a substantial part of the events giving rise to Plaintiffs' claim occurred in the District of Columbia, and Defendants are headquartered in this district.

16.     16 U.S.C. § 1540(g) and 5 U.S.C. § 702 provide waivers of the federal government's sovereign immunity.

## PARTIES

17.     Plaintiff the Center for Biological Diversity ("Center") is a non-profit corporation incorporated in California and headquartered in Tucson, Arizona, with offices throughout the United States, including Alaska, Arizona, California, the District of Columbia, Florida, Minnesota, New Mexico, Oregon, and Washington. The Center works through science, law, and creative media to secure a future for all species, great or small, hovering on the brink of extinction. The Center has more than 68,000 members and more than one million online supporters. The Center and its members are concerned with the conservation of imperiled species, including giraffes, and with the effective implementation of the ESA. The ongoing extinction of giraffes has prompted the Center to take action for giraffes in Africa by trying to secure additional international protections and striving to ensure the United States is a leader in protecting these highly imperiled species including by protecting them under the ESA.

18.     Plaintiff the Humane Society International ("HSI") is a global non-profit organization, headquartered in Washington, D.C., with offices and programs around the world, including in South Africa. HSI works to protect animals from abuse, including wildlife

trafficking and trophy hunting, and has expended substantial organizational resources advocating for giraffes.

19.     Plaintiff Humane Society of the United States ("HSUS") is a non-profit organization headquartered in Washington, D.C., that has, on behalf of its members who are personally vested in ensuring the continued survival of some of the world's most iconic imperiled species, worked for decades to improve the plight of African wildlife. HSUS has, for example, petitioned FWS to list elephants, lions, leopards, and chimpanzees as endangered in order to curtail the import of hunting trophies and the domestic trade in such wildlife, and commenting in opposition to hundreds of permit applications to import endangered species trophies or to take endangered species in the U.S.

20.     Plaintiff Natural Resources Defense Council ("NRDC") is a national non-profit organization with hundreds of thousands of members. Part of NRDC's mission is to safeguard the Earth: its people, its plants and animals, and the natural systems on which all life depends. NRDC is headquartered in New York, New York, with offices in Washington, D.C.; San Francisco and Santa Monica, California; Chicago, Illinois; Bozeman, Montana, and Beijing, China. NRDC works at the state, and federal, and international levels to advance legal protections for endangered and threatened wildlife, including giraffes.

21.     Plaintiffs' members and staff include individuals who enjoy observing, photographing, filming, and otherwise appreciating giraffes and their habitat. These interests range from scientific and professional to educational, recreational, aesthetic, moral, and spiritual. Plaintiffs' members and staff enjoy, on an ongoing basis, the biological, scientific, research, education, economic, conservation, recreational, and aesthetic values of the remaining habitat where giraffes can be found. For example, Center member Brett Hartl, HSI staff member Iris Ho,

HSUS member Audrey Delsink, and NRDC member Caitlin Crary Taylor currently gain or will gain aesthetic enjoyment from viewing giraffes and their habitat in Africa. These members and staff have previously viewed and enjoyed giraffes and have plans to do so again. An integral aspect of Plaintiffs' members' use and enjoyment of giraffes is the expectation and knowledge that these species persist in their native habitat. For this reason, Plaintiffs' use and enjoyment of giraffes are entirely dependent on the continued existence of healthy, sustainable populations of the species in the wild.

22.     Defendants' failure to comply with the ESA's non-discretionary deadline for issuing a 90-day finding deprives giraffes of statutory protections that are vitally necessary to their survival and recovery. Until the species is adequately protected under the ESA, Plaintiffs' and their members' interests in giraffe conservation and recovery are impaired. Therefore, Plaintiffs' members and staff are injured by Defendants' failure to make a timely determination as to whether Plaintiffs' petition to protect giraffes under the ESA presents substantial scientific or commercial information indicating that the petitioned action may be warranted, as well as by the ongoing harm to giraffes and their habitat in the absence of such protections. The injuries described are actual, concrete injuries presently suffered by Plaintiffs and their members, and they will continue to occur unless this Court grants relief. These injuries are directly caused by Defendants' inaction. The relief sought herein – an order compelling a 90-day finding for giraffes – would redress these injuries. Plaintiffs and their members have no other adequate remedy at law.

23.     Defendant Ryan Zinke is the Secretary of the Interior and is the federal official in whom the ESA vests final responsibility for making decisions and promulgating regulations

required by and in accordance with the ESA, including listing decisions. Secretary Zinke is sued in his official capacity.

24.     Defendant the United States Fish and Wildlife Service is the agency within the Department of the Interior that is charged with implementing the ESA, including for giraffes, as well as ensuring prompt compliance with the ESA's mandatory listing deadlines.

## LEGAL BACKGROUND

25.     The Endangered Species Act ("ESA" or "Act"), 16 U.S.C. §§ 1531-1544, provides comprehensive protections for both domestic and foreign endangered and threatened species.

26.     In passing the Act, Congress found that different species "have been rendered extinct as a consequence of economic growth and development untempered by adequate concern and conservation" and that "other species of fish, wildlife, and plants have been so depleted in numbers that they are in danger of or threatened with extinction." 16 U.S.C. § 1531(a)(1)-(2). Accordingly, the purpose of the ESA is to "provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered species and threatened species." *Id*. § 1531(b).

27.     To this end, section 4 of the ESA requires the Secretary to protect imperiled species by listing them as either "endangered" or "threatened." 16 U.S.C. § 1533(a). The Secretary has delegated its administration of the ESA to FWS. 50 C.F.R. § 402.01(b).

28.     The Service must make listing determinations "solely on the basis of the best available scientific and commercial information regarding a species' status, without reference to possible economic or other impacts of such determination." 50 C.F.R. § 424.11(b); 16 U.S.C. § 1533(b)(1)(A).

29.     The ESA defines a "species" as "any subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature." 16 U.S.C. § 1532(16).

30.     Once a species is listed, the ESA's conservation measures apply to protect it.

31.     Endangered species are automatically protected under section 9 of the ESA, which includes a prohibition on the import, export, and interstate commerce in endangered species or attempts to engage therein, 16 U.S.C. § 1538(a)(1)(A), (D)-(G), (g), unless such activity is "for scientific purposes or to enhance the propagation or survival of the affected species . . . ." *Id.* § 1539(a)(1)(A).

32.     Under section 4(d) of the ESA, the Service must issue regulations to conserve threatened species and may extend the statutory protections afforded to endangered species by section 9 to threatened species. 16 U.S.C. § 1533(d).

33.     The ESA further provides for "International Cooperation" in the conservation of foreign species, 16 U.S.C. § 1537, and according to the Service the listing of foreign species also provides for "increased awareness of listed species, research efforts to address conservation needs, or funding for in-situ conservation of the species in its range countries" including to "develop and manage programs to conserve listed species in foreign countries, encourages conservation programs for such species, and . . . for programs, such as personnel and training."

34.     To ensure the timely protection of species at risk, Congress set forth a detailed process whereby citizens may petition the Service to list a species as endangered or threatened and deadlines for the Service's response. 16 U.S.C. § 1533(b); 50 C.F.R. § 424.14.

35.     The petition process includes mandatory, nondiscretionary deadlines so that species in need of protection receive the ESA's substantive protections in a timely fashion. The

three required findings are the 90-day finding, the 12-month listing determination (also known as the "12-month finding"), and for species that the Service determines warrant protection, the final listing determination.

36.     Upon receipt of a listing petition, the Service must "to the maximum extent practicable, within 90 days" make an initial finding as to whether the petition "presents substantial scientific or commercial information indicating that the petitioned action may be warranted." 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. § 424.14(h)(1).

37.     If the Service finds that the petition does *not* present substantial information indicating that listing may be warranted, the agency must publish that finding and the petition is rejected and the process ends. 50 C.F.R. § 424.14(h)(1).

38.     If the Service determines that a petition presents substantial information indicating that listing may be warranted, the agency must publish that finding and proceed to conduct a full scientific review of the species' status. 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. § 424.14(h)(1). This is called a "status review," which culminates in a 12-month finding.

39.     Upon completion of this status review, and within twelve months of the date it receives the petition, the Service must make a listing determination (or "12-month finding") with one of three determinations: (1) listing is "warranted;" (2) listing is "not warranted;" or (3) listing is "warranted but precluded" by other pending proposals for listing species, provided certain circumstances are present. 16 U.S.C. § 1533(b)(3)(B).

40.     If the Service's 12-month finding concludes that listing is warranted, the agency must publish notice of the proposed regulation to list the species as endangered or threatened in the Federal Register for public comment. 16 U.S.C. § 1533(b)(3)(B)(ii).

41.     Within one year of publication of the proposed regulation, the ESA requires the

Service to render its final determination on the proposal. 16 U.S.C. § 1533(b)(6).

## FACTUAL BACKGROUND

42.     Giraffes are the tallest land mammal and readily identified by their long-necks

and distinctive coats. Despite their popularity, relatively little scientific research has been

conducted on the species; questions remain as to how and why they developed such long necks

and how they regulate the highest blood pressure of any land mammal.

43.     Giraffes once occupied much of the savannah and savannah woodlands of Africa.

Today, they are only found in fragments of their historic range.

44.     The IUCN Giraffe and Okapi Specialist Group currently recognizes one species

of giraffe (*Giraffa camelopardalis*) and nine subspecies: West African (*Giraffa camelopardalis*

*peralta*); Kordofan (*G. c. antiquorum*); Nubian (*G. c. camelopardalis*); reticulated (*G. c.*

*reticulata*); Rothschild's (*G. c. rothschildi*); Masai (*G. c. tippelskirchi*); Thornicroft's (*G. c.*

*thornicrofti*); Angolan (*G. c. angolensis*); and South African (*G. c. giraffa*).

45.     As a result, Plaintiffs' giraffe Petition asks the Service to protect the giraffe as an

endangered species under the ESA; or alternatively, if taxonomic consensus changes or the

Service decides to list an entity below the species level, it requests that all giraffe subspecies or

distinct population segments be protected at least as threatened, with qualified subspecies or

distinct population segments protected as endangered.

46.     Giraffes have experienced severe habitat loss and fragmentation due to factors

including conversion of native habitat to agriculture, uncontrolled timber harvest, poor land use

planning, and urban expansion.

47.     Giraffes are hunted both legally as trophies and for food and illegally for food and parts and products. Giraffes are also threatened by civil unrest or lax enforcement of wildlife laws in range countries and accompanying poaching for bushmeat, bones, tail hair, and other parts. Poaching, as well as legal trophy hunting, is further spurred by the international trade in giraffe parts and products.

48.     An analysis of data from the Service's LEMIS database and an assessment of online sales of giraffe products revealed that the United States is a major importer of giraffe parts and derivatives. As documented in the giraffe Petition, between 2006 and 2016, the United States imported 21,402 bone carvings, 3,008 skin pieces, and 3,744 hunting trophies. The same database also documented an increase in commercial imports of giraffe bone carvings, skin pieces, and shoes in recent years as well as hunting trophies. On-line research revealed that giraffe bones are increasingly being used a substitute for ivory in items such as knife and gun handles.

49.     A subsequent investigation by Plaintiffs HSI and HSUS reported in 2018 revealed that giraffe parts and products continue to be sold online and in stores by at least 51 dealers across the United States. The investigation also found that American trophy hunters supply the U.S. market with giraffe trophies and parts, including skins and bones.

50.     Giraffes are further threatened by disease, inbreeding depression in isolated populations, collisions with automobiles and airplanes, and the increased frequency and magnitude of droughts associated with climate change.

51.     The need for giraffe conservation is dire. The only international convention under which giraffes are protected is the Convention on Migratory Species. CMS Art. IV.1. However, giraffes are only listed on Appendix II of this Convention, which does not provide on-the-ground

protections for giraffes. Instead, a side-agreement must be developed to implement Appendix II's habitat conservation and recovery requirements, which has not yet occurred for giraffes.

52.     Despite the need for giraffe protections, 19 months after receiving Plaintiffs' giraffe Petition the Service has yet to make the requisite 90-day finding.

53.     In the 19 months since Plaintiffs filed their giraffe Petition, the Service has undertaken seven foreign species listing related actions that were published in the Federal Register, including adopting three final rules.

54.     In the 19 months before Plaintiffs filed their giraffe Petition, the Service undertook 14 foreign species listed related actions that were published in the Federal Register, including adopting six final rules.

55.     Based on these facts, it was practicable for the Service to make the requisite 90-day finding on Plaintiffs' giraffe Petition before this action was filed, but the agency failed to act.

**CLAIM FOR RELIEF**

**Violation of the Endangered Species Act (16 U.S.C. § 1533(b)(3)(A))**
**Failure to Make a 90-Day Finding for the Giraffe**

56.     Plaintiffs re-allege and incorporate by reference all the allegations set forth in this Complaint, as though fully set forth below.

57.     The ESA required Defendants to make a 90-day finding within 90 days of their receipt of the Petition to list the giraffe under the ESA. 16 U.S.C. § 1533(b)(3)(A). Defendants are in violation of the ESA's 90-day finding deadline.

58.     Plaintiffs and their members are injured by the Service's failure to issue the required 90-day finding, violating Congress's mandate in the ESA that the Service issue that decision within 90-days.

59. The APA provides that a reviewing court "shall" interpret statutes and "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

60. Defendants' failure to make a 90-day finding on the giraffe Petition is a violation of the ESA, 16 U.S.C. § 1533(b)(3)(A), and its implementing regulations, 50 C.F.R. § 424.14(h)(1). Alternatively, Defendants' failure constitutes agency action that has been "unlawfully withheld or unreasonably delayed," within the meaning of the APA. 5 U.S.C. § 706(1).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests this Court:

A. Declare that Defendants have violated the ESA and/or the APA by failing to issue a timely 90-day finding on the Petition to list giraffes under the ESA;

B. Order Defendants to issue, by a date certain, a 90-day finding on the Petition to protect giraffes under the ESA, 16 U.S.C. § 1533(b)(3)(A);

C. Award Plaintiffs their fees and costs; and

D. Grant Plaintiffs such other relief as the Court deems just and proper.

DATED:  December 6, 2018                     Respectfully submitted,

/s/ Tanya M. Sanerib
Tanya M. Sanerib (D.C. Bar No. 473506)
Telephone: (206) 379-7363
tsanerib@biologicaldiversity.org
Center for Biological Diversity
2400 NW 80th Street, #146
Seattle, WA 98117

Anna Frostic (D.C. Bar No. 977732)
Telephone: (202) 676-2333
afrostic@humanesociety.org
The Humane Society of the United States
1255 23rd Street NW, Suite 450
Washington, D.C. 20037

Stephen Zak Smith*
Telephone: (310) 434-2334
zsmith@nrdc.org
Natural Resources Defense Council
1314 2nd Street
Santa Monica, CA 90401
* Pro Hac Motion Forthcoming